**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEADFAST FINANCIAL LP<br>and<br>STEADFAST CAPITAL MANAGEMENT LP,<br><br>        Plaintiff,<br><br>    -against-<br><br>STEADFAST EQUITY HOLDINGS LLC<br>and<br>STEADFAST EQUITY INC.<br><br>       Defendant. | Case No. 26CV03322 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. ii

I. INTRODUCTION ................................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................................ 3

    A. The Steadfast Plaintiffs and the STEADFAST Marks ............................................ 3

    B. The Steadfast Plaintiffs' Federal Trademark Registrations ................................... 5

    C. The Defendants and Their Adoption of the STEADFAST Name .......................... 6

    D. Defendants' Suspicious Business Practices ............................................................ 9

        1. Dubious High-Yield Returns. ..................................................................... 10

        2. Misleading Statements About Regulatory Compliance. ........................... 12

        3. False Claims About Domain Name History. ............................................. 13

        4. False Claims About Track Record. ............................................................ 14

        5. High-Pressure Sales Tactics. ...................................................................... 14

    E. Adverse Publicity Under the STEADFAST Name ............................................... 14

    F. The Steadfast Plaintiffs' Correspondence with Defendants and Defendants' Bad Faith ............................................................................................................ 15

    G. Procedural Posture ................................................................................................ 17

III. ARGUMENT ....................................................................................................................... 18

    A. Legal Standard for Preliminary Injunction .......................................................... 18

    B. This Court May Exercise Personal Jurisdiction Over Defendants........................ 19

    C. The Steadfast Plaintiffs Will Suffer Irreparable Harm Absent an Injunction....... 20

    D. The Steadfast Plaintiffs Are Likely to Succeed on the Merits of their Trademark Infringement and Unfair Competition Claims.................................... 22

        1. The STEADFAST Mark Is Valid and Strong ........................................... 22

        2. There Is a Strong Likelihood of Confusion .............................................. 23

        3. The Steadfast Plaintiffs Are Also Likely to Succeed on Their Anti-Cybersquatting Consumer Protection Act Claim.................................... 28

    E. The Balance of Hardships Tips Decidedly in the Steadfast Plaintiffs' Favor ...... 28

    F. The Public Interest Favors an Injunction .............................................................. 29

IV. CONCLUSION .................................................................................................................... 30

## TABLE OF AUTHORITIES

**CASES**                                                                                                                **Page**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
    414 F.3d 400 (2d Cir. 2005) ...................................................................................22

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976) ......................................................................................23

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*,
    330 F.3d 617 (4th Cir. 2003) .................................................................................31

*Bath & Body Works Brand Mgmt., Inc. v. Summit Ent., LLC*,
    7 F. Supp. 3d 385 (S.D.N.Y. 2014) .......................................................................24

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ............................................................................19, 20

*City of New York by and through FDNY v. Henriquez*,
    98 F.4th 402 (2d Cir. 2024) ...................................................................................18

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ...............................................................................................20

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
    991 F.2d 1072 (2d Cir. 1993) ................................................................................22

*Harrods Ltd. v. Sixty Internet Domain Names*,
    302 F.3d 214 (4th Cir. 2002) .................................................................................31

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012) ....................................................................................19

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    454 F.3d 108 (2d Cir. 2006) ..................................................................................18

*Mattel, Inc. v. www.fisher-price.online*,
    No. 21-CV-9608 (LJL), 2022 WL 2801022 (S.D.N.Y. July 18, 2022) ...............30

*MDB LLC v. Hussain*,
    No. 14-CV-9281 (VEC), 2016 WL 1267793 (S.D.N.Y. Mar. 29, 2016) .............28

*Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*,
    182 F.3d 133 (2d Cir. 1999) ..................................................................................27

*Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*,
    875 F. Supp. 2d 211 (W.D.N.Y. 2012) ..................................................................28

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ...................................................................29

*Nike, Inc. v. B&H Customs Servs., Inc.*,
    565 F. Supp. 3d 498 (S.D.N.Y. 2021) ...................................................................22

*NYP Holdings v. New York Post Pub. Inc.*,
    63 F. Supp. 3d 328 (S.D.N.Y. 2014) ..................................................................23

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
    469 U.S. 189 (1985)..........................................................................................6

*Polaroid Corp. v. Polarad Electronics Corp.*,
    287 F.2d 492 (2d Cir. 1961) ..............................................................23, 24, 27, 28

*RiseandShine Corp. v. PepsiCo, Inc.*,
    41 F.4th 112 (2d Cir. 2022) ..............................................................................18

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ................................................................................18

*Sporty's Farm L.L.C. v. Sportsman's Mkt.*, Inc.,
    202 F.3d 489 (2d Cir. 2000) ..............................................................................28

*Star Indus., Inc. v. Bacardi & Co. Ltd.*,
    412 F.3d 373 (2d Cir. 2005) ..........................................................................26, 27

*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995) ................................................................................20

*TushBaby, Inc. v. Jinjang Kangbersi Trade Co. Ltd.*,
    No. 24-CV-6150 (JMF), 2024 WL 4627452 (S.D.N.Y. Oct. 30, 2024) ..............................18

*Two Hands IP LLC v. Two Hands Am., Inc.*,
    563 F. Supp. 3d 290 (S.D.N.Y. 2021) ...................................................................20

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011).....................................................................29

*Webadviso v. Bank of Am. Corp.*,
    448 F. App'x 95 (2d Cir. 2011) ...........................................................................28

## RULES & STATUTES

15 U.S.C. § 1057(b) ..............................................................................................22, 23

15 U.S.C. § 1072.......................................................................................................6, 22

15 U.S.C. § 1114........................................................................................................18, 22

15 U.S.C. § 1115(a)...................................................................................................22, 23

15 U.S.C. § 1115(b) .....................................................................................................6, 23

15 U.S.C. § 1116(a)........................................................................................................20

15 U.S.C. § 1125(a) ...................................................................................................18, 22

15 U.S.C. § 1125(d) ...................................................................................................18, 28

N.Y. C.P.L.R. § 301........................................................................................................19

N.Y. C.P.L.R. § 302 ...................................................................................................................19

**OTHER AUTHORITIES**

*3 McCarthy on Trademarks and Unfair Competition* § 23:49 (5th ed.) ..................................... 24, 25

Plaintiffs Steadfast Financial LP ("Steadfast Financial") and Steadfast Capital Management LP ("Steadfast Capital") (collectively, the "Steadfast Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion for Preliminary Injunction against Defendants Steadfast Equity Holdings LLC and Steadfast Equity Inc. (collectively, "Defendants" or "Steadfast Equity"), *inter alia*, to preliminarily enjoin Defendants from continued use of the STEADFAST mark and variants thereof in connection with financial and investment services.

## I.    <u>INTRODUCTION</u>

In the world of financial investment services, a name is everything. For almost three decades, the Steadfast Plaintiffs have built an impeccable reputation as leading sponsors and managers of collective investment vehicles in the form of hedge funds, operating under the name and mark STEADFAST from their headquarters in New York City. Declaration of Zachary Bodmer dated April 13, 2026 (Dkt. 22) ("First Bodmer Decl.") ¶ 5. The Steadfast Plaintiffs manage approximately five billion dollars in assets and hold two U.S. federal service mark registrations for STEADFAST, including one that is incontestable. First Bodmer Decl. ¶¶ 5, 8, 9, Exs. A, B. Their investors include pension funds, university endowments, major philanthropic trusts, nonprofit organizations, and other institutional and high net-worth investors—ordinary Americans whose financial well-being depends on the Steadfast Plaintiffs' reputation and performance. First Bodmer Decl. ¶ 11.

Defendants are a highly suspicious investment operation that have co-opted the identical STEADFAST name to market dubious high-yield investment vehicles to U.S. investors, including in this judicial district. Defendants' advertising, website located at www.steadfastequity.com and www.steadfastequity.net (which resolves to steadfastequity.com) ("Infringing Steadfast Website"), and promotional materials are riddled with false and

misleading claims, including questionable assertions about their track record and domain name history, suspect return rates as high as 525.04% compounded, and misleading statements about regulatory compliance. *See* First Bodmer Decl. ¶¶ 16-24, 27, Exs. C, D, E, F, G; Declaration of Janet Satterthwaite dated April 15, 2026 (Dkt. 23) ("Satterthwaite Decl.") ¶¶ 16, 18–20; Declaration of Elissa Brockbank Reese filed herewith ("Reese Decl.") Ex. 2. Adverse publicity has already involved the STEADFAST name as a result of Defendants' actions, including an extensive Reddit thread titled "Is this a scam?: HYSA with Steadfast Equity." Satterthwaite Decl. ¶ 26, Ex. C. This negative publicity is precisely the type of reputational harm from which the Steadfast Plaintiffs seek immediate relief. Declaration of Zachary Bodmer filed herewith ("Second Bodmer Decl.") ¶ 11.

Worse still, Defendants have acted with willful disregard for the Steadfast Plaintiffs' rights. After receiving a cease-and-desist letter from the Steadfast Plaintiffs in June 2025, Defendant Steadfast Equity Inc. responded with assurances that it would phase out the use of STEADFAST in the United States—only to form a new Delaware entity, Defendant Steadfast Equity Holdings LLC, a mere fourteen days later and establish a New York City office on Park Avenue, just like the Steadfast Plaintiffs. Satterthwaite Decl. ¶¶ 28, 30, 32–35, Exs. E, G, H.

The Steadfast Plaintiffs are entitled to a preliminary injunction because they are likely to succeed on the merits of their trademark infringement and related claims; they are irreparably harmed absent injunctive relief; the balance of hardships tips decidedly in their favor; and a preliminary injunction would serve the public interest by preventing consumer confusion and protecting the investing public from a suspicious operation trading on the Steadfast Plaintiffs' well-known STEADFAST name.

## II.    FACTUAL BACKGROUND

### A.    The Steadfast Plaintiffs and the STEADFAST Marks

For almost thirty years, the Steadfast Plaintiffs have provided financial and investment services under the name and mark STEADFAST and variants thereof (the "Steadfast Mark(s)") throughout the United States and abroad from their home offices in New York City. First Bodmer Decl. ¶¶ 4–7. The Steadfast Plaintiffs are in the business of offering fund-management services in the private investment market, principally in the form of hedge funds that primarily invest in securities, including equity and debt investments. First Bodmer Decl. ¶ 4.

Founded in 1997, Plaintiff Steadfast Financial LP is a Delaware limited partnership with a principal place of business at 450 Park Avenue, 20th Floor, New York, NY 10022. First Bodmer Decl. ¶¶ 2, 4. Steadfast Financial is a leading sponsor of collective investment vehicles in the form of hedge funds. Through such collective investment vehicles, Steadfast Financial (as well as its affiliated entities) primarily invests in securities, which includes debt and equity investments. However, Steadfast Financial's investments are not confined to any particular approach or industry, and pursuant to its organizational documents, may at any time include, without limitation, securities that are not publicly traded, including: convertible securities; private equity and venture capital investments; corporate and government debt (whether secured or unsecured); bonds, notes or other debentures or debt participations; options (purchased or written) on any type of security, commodity or derivative; commodities; futures contracts; forward contracts (including, without limitation, currency forward contracts); currencies; and other asset classes, such as hard assets. Second Bodmer Decl. ¶ 5.

Plaintiff Steadfast Capital Management LP, also a Delaware limited partnership headquartered at the same New York address, is an affiliate of Plaintiff Steadfast Financial LP. *See* First Bodmer Decl. ¶ 2. Steadfast Capital also sponsors and manages collective investment

3

vehicles in the form of hedge funds. Through such collective investment vehicles, Steadfast Capital (as well as its affiliated entities) also primarily invests in securities, including debt and equity investments. First Bodmer Decl. ¶¶ 4–5.

Since at least as early as 1997, the Steadfast Plaintiffs have continuously used the Steadfast Mark to identify their financial and investment services throughout the United States and elsewhere. First Bodmer Decl. ¶ 5. The Steadfast Plaintiffs currently manage approximately five billion dollars in net assets. First Bodmer Decl. ¶ 5. They have done business under a family of corporate and trade names containing the term STEADFAST, including STEADFAST CAPITAL MANAGEMENT LP, STEADFAST FINANCIAL LP, STEADFAST ADVISORS LP, STEADFAST GP LLC, STEADFAST GP HOLDINGS LLC, and STEADFAST PRINCIPALS LLC. First Bodmer Decl. ¶ 6. All of the investment funds managed by the Steadfast Plaintiffs also contain their STEADFAST mark, including AMERICAN STEADFAST, L.P., STEADFAST INTERNATIONAL LTD., and STEADFAST INTERNATIONAL MASTER FUND LTD. First Bodmer Decl. ¶ 7.

The investors in the Steadfast Plaintiffs' funds include pension funds, university endowments, major philanthropic trusts, nonprofit organizations, and other institutional and high net-worth investors. First Bodmer Decl. ¶ 11. Many ordinary Americans whose pension funds, scholarship money, or other investments are entrusted to the Steadfast Plaintiffs' care are ultimately affected by their performance and any harm caused by Defendants' conduct. First Bodmer Decl. ¶ 11.

**B.      The Steadfast Plaintiffs' Federal Trademark Registrations**

In addition to robust common-law rights arising from nearly three decades of continuous use of the Steadfast Marks, Plaintiff Steadfast Capital owns two federal service mark registrations for the mark STEADFAST. First Bodmer Decl. ¶¶ 8–9, Exs. A, B.

First, Steadfast Capital owns U.S. Service Mark Registration No. 6,344,980 for the service mark STEADFAST for "Financial advisory services; Provision of advice relating to securities and other financial instruments, namely, both public and private securities, commodities, currencies, and derivatives to clients that include collective investment vehicles, private investment funds, hedge funds, mutual funds, venture capital funds, and separately managed accounts; financial services, namely, financial analysis and consultation, forecasting and research, and financial investments in the field of collective investment vehicles, private investment funds, hedge funds, mutual funds, venture capital funds, and separately managed accounts; Financial asset management; financial analysis and consultation; acquisition, holding, administering and disposition of interests in securities and other financial products, namely, both public and private securities, commodities, currencies, and derivatives; advising clients in relation to the foregoing; financial advising relating to collective investment vehicles, private investment funds, hedge funds, mutual funds, venture capital funds, and separately managed accounts; providing advice on fundraising and optimal capital structures" in International Class 36, with a first use date of December 31, 1997. First Bodmer Decl. ¶ 8, Ex. A.

Second, Steadfast Capital owns incontestable U.S. Service Mark Registration No. 3,083,159 for the service mark STEADFAST for "financial services, namely, financial analysis and consultation, forecasting and research, and financial investments in the field of mutual funds, hedge funds and private equity investments and related services" in International Class 36. First

Bodmer Decl. ¶ 9, Ex. B. Both registrations are valid, subsisting, and in full force and effect. First Bodmer Decl. ¶¶ 8–9.

These federal registrations are conclusive evidence of the registrant's ownership of, and exclusive right to use, the registered marks in commerce in connection with all of the services identified in the registrations, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b). They also provide constructive notice of the Steadfast Plaintiffs' rights nationwide. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 199–200 (1985); 15 U.S.C. § 1072.

Because of the Steadfast Plaintiffs' long use of the STEADFAST Marks, the billions of dollars in assets that they manage, and their sterling reputation, the Steadfast Mark is known in the financial services industry, and specifically within the world of pooled securities investments, as a source of high-quality financial and investment services, particularly in this district, the global financial capital where the Steadfast Plaintiffs' business is headquartered. First Bodmer Decl. ¶ 10.

### C. The Defendants and Their Adoption of the STEADFAST Name

On information and belief Defendant Steadfast Equity Inc. is a foreign corporation with a Samoan address care of Maystar Chambers, an offshoring/financial trustee company, in Apia, Samoa, a mail-drop office in Hong Kong, and all five of its incorporators are Filipino nationals residing in Olongapo City. *See* First Bodmer Decl. ¶ 15, Ex. C at 48; Satterthwaite Decl., Ex. F at 6. According to SEC filings, Defendant Steadfast Equity Inc. was incorporated in Samoa in 2025 (though records from Samoa Ministry of Commerce, Industry & Labour show no company search results for STEADFAST), and company records from the Philippines indicate a possible registration date of 2017. First Bodmer Decl., Ex. E at 2; Reese Decl. ¶ 7, Ex. 1; Satterthwaite Decl., Ex. F at 9-10. Despite these offshore origins, Defendants advertise themselves to investors

6

and potential investors as a singular "**U.S.-based firm, with our headquarters structured as a Delaware LLC**" and "[a]ll investor-facing contracts, Regulation D Filings, escrow accounts, and legal accountability fall[ing] under **U.S. jurisdiction**." Satterthwaite Decl., Ex. D at 9–10, Ex. I:



*available at* https://www.steadfastequity.com/post/official-response-to-r-banking-on-reddit-from-steadfast-equity, last visited April 15, 2026;

7

,

*available at* https://www.steadfastequity.com/contact-us, last visited April 15, 2026.

Defendant Steadfast Equity Holdings LLC is a Delaware limited liability company registered on July 8, 2025, with A Registered Agent, Inc. in Dover, Delaware as its registered agent. Satterthwaite Decl. ¶ 33, Ex. H. Defendants now claim a principal New York Office location at 228 Park Avenue South, New York, New York 10003. Satterthwaite Decl. ¶ 34, Ex. I.

Defendants own and operate the Infringing Steadfast Website, where they market, promote, and offer investment vehicles and financial services under the name STEADFAST EQUITY, including to investors in the United States:

8



,

Reese Decl. ¶ 8, Ex. 2; Satterthwaite Decl. ¶¶ 16, 18–20, Ex. G (letter from Defendant Steadfast Equity Inc. sent from various email addresses at the domains steadfastequity.com and steadfastequity.net); *see* Bodmer Decl., Ex. C. Defendants have a dedicated phone number with a New York area code (646) for investors or potential investors in the United States and Canada. First Bodmer Decl., Ex. C at 38. Defendant Steadfast Equity Inc. filed a Form D with the SEC indicating that it has $250,000 in U.S. investments. First Bodmer Decl., Ex. E at 12. Defendants also sent a Private Placement Memorandum to an investigator hired by the Steadfast Plaintiffs (the "PPM"), which included a dedicated investor phone number with a 646 U.S. area code for investors in the U.S. and Canada. First Bodmer Decl. ¶ 14, Ex. D at 2.

###### D.    Defendants' Suspicious Business Practices

Defendants' advertising and promotional materials raise numerous red flags as to the legitimacy of their services.

### 1.     Dubious High-Yield Returns.

Defendants promote on their website and in their PPM dubious return rates as high as +120% over five years and 525.04% compounded over 12 years, which are highly unusual for legitimate investment vehicles:



,

,



,



,

 

,

First Bodmer Decl. ¶ 16, Exs. C, D.

### 2.     Misleading Statements About Regulatory Compliance.

Defendants claim that they "operate under a strict 3a-5 finance structure—which legally prohibits your capital from being used for anything other than its stated business-purpose deployment," Infringing Steadfast Website, *available at* www.steadfastequity.com/faq, when, in fact, Rule 3a-5 of the Investment Company Act of 1940 provides a safe harbor exemption from the stringent regulations of the Act. First Bodmer Decl. ¶¶ 17–19, Exs. C, D. Throughout the Infringing Steadfast Website and the PPM, Defendants claim legitimacy because they submit SEC filings:



,



,

First Bodmer Decl. Exs. C, D at 76. But to date, each Defendant has submitted only a Form D (with an amendment thereto in the case of Steadfast Equity Inc.) simply claiming exemption from SEC regulations. First Bodmer Decl. ¶ 19, Ex. E. An SEC filing alone does not establish credibility. First Bodmer Decl. ¶ 19.

### 3. False Claims About Domain Name History.

Defendants misrepresent their domain ownership of steadfastequity.com[1] as having been "active for 20 years," which they claim is a "strong sign of longevity and reliability":

**Building Confidence in Your Investment**

We understand that choosing where to invest your money is an important decision. At Steadfast Equity, we believe that trust is earned through transparency, experience, and adherence to high standards. Our goal is to provide clear, verifiable information so you can make an informed decision with confidence.

Unfortunately, many investors focus on the wrong signals—like flashy presentations—rather than the fundamental markers of credibility. Here's what truly matters:

**A Proven Track Record of Stability**

**1)    20 Year History Recorded by VERISIGN**

✔ Our domain, SteadfastEquity.com, has been active for 20 years—a strong sign of longevity and reliability.

✔ Domain records are managed independently by Verisign, the official registry operator for .com domains, and cannot be forged or altered retroactively.

✔ Verisign is a publicly traded company (NASDAQ: VRSN) and operates critical internet infrastructure, including managing .com and .net domains, which support the majority of global web traffic and commerce.

✔ You can verify our domain's history through publicly available domain records (such as Whois Lookup), which track the original registration date of any domain.

,

---

[1] According to WHOIS, the owner of the domain name registration for steadfastequity.com is Defendant Steadfast Equity Inc. Reese Decl. ¶ 8, Ex. 2. The address provided in WHOIS for the steadfastequity.com domain, however, is the Delaware registered agent of Defendant Steadfast Equity Holdings LLC. *Id.* The WHOIS information for the domain name registration for steadfastequity.net is hidden behind a privacy service. Satterthwaite Decl. ¶ 17, Ex. A. Defendants must own or control the domain name registration steadfastequity.net as it resolves to steadfastequity.com, and Defendants have communicated with the Steadfast Plaintiffs' counsel via email addresses at the steadfastequity.net domain. Satterthwaite Decl. ¶¶ 16–20, Ex. G.

First Bodmer Decl., Ex. D at 76. But these statements are false. The Steadfast Plaintiffs have personal knowledge that the domain name steadfastequity.com was originally registered to and used by a different entity—a German private equity firm, previously operating under the name Steadfast Capital, which changed its name in 2020 after litigation with the Steadfast Plaintiffs. First Bodmer Decl. ¶¶ 20–21. Defendants, therefore, have not owned, used, or been connected to the steadfastequity.com domain name registration for the claimed 20 years. First Bodmer Decl. ¶¶ 20–21, Ex. F.

### 4.      False Claims About Track Record.

Defendants' website claims a history and track record dating back to 2015, which is directly contradicted by SEC filings showing an incorporation date of 2025. First Bodmer Decl. ¶ 19, Ex. C at 41.

### 5.      High-Pressure Sales Tactics.

Defendants also engage in high-pressure sales tactics, as evidenced by emails Steadfast Equity Inc. sent to the Steadfast Plaintiffs' investigator with increasingly urgent, scarcity-driven messages. First Bodmer Decl. ¶¶ 22–23, Ex. G.

### E.      Adverse Publicity Under the STEADFAST Name

Adverse publicity has already ensued regarding Defendants' legitimacy. An extensive Reddit thread titled "Is this a scam?: HYSA with Steadfast Equity" was posted in 2025, accusing Defendants of scamming investors. The thread included numerous posts discussing and outlining the suspicious nature of Defendants' business, including observations that Defendants' SEC filings show the company was only created in 2025, that Defendants' return promises are "ridiculously high" and "not sustainable," that Defendants use "high-pressure sales tactic[s],"

14

and that Defendants' operation is a "[t]otal scam" such that readers of the thread should "[r]un as fast as you can." Satterthwaite Decl. ¶ 26, Ex. C.

Following the Reddit thread, Defendants posted an "Official response to r/Banking on Reddit from Steadfast Equity" on their website, accusing Reddit of "actively censoring" Defendants' response and threatening "injunctions or defamation claims" against Reddit. Satterthwaite Decl. ¶ 27, Ex. D.

Online dialogues about whether a STEADFAST-named entity is a scam are precisely the type of harm from which the Steadfast Plaintiffs seek relief. First Bodmer Decl. ¶ 26. Indeed, adverse publicity like this can have potentially devastating ramifications to the Steadfast Plaintiffs' hard-earned reputation and goodwill and the lack of control by the Steadfast Plaintiffs' of their STEADFAST Mark is alone causing irreparable harm. First Bodmer Decl. ¶ 26.

### F. The Steadfast Plaintiffs' Correspondence with Defendants and Defendants' Bad Faith

On June 19, 2025, the Steadfast Plaintiffs sent a cease-and-desist letter to Defendant Steadfast Equity Inc. expressing concerns regarding its use of the STEADFAST Mark and demanding that it cease such use (the "June 2025 Letter"). Satterthwaite Decl. ¶ 28, Ex. E. The June 2025 Letter identified the Steadfast Plaintiffs' federal trademark registrations, highlighted the numerous red flags concerning Defendants' business practices, and demanded that Defendants cease all use of STEADFAST in connection with financial services and transfer any domain names containing the term STEADFAST. Satterthwaite Decl., Ex. E.

On June 24, 2025, Defendant Steadfast Equity Inc. sent a response via email from the email address Legal Department Steadfast Equity legal@steadfastequity.net with a copy to Marc Calderon, management@steadfastequity.net and management.global@steadfastequity.com (the "Response to June 2025 Letter"). Satterthwaite Decl. ¶ 30, Ex. G. The Response was signed

15

"Atty. Von Rodriguez General Counsel" without an address or contact information. Satterthwaite Decl. ¶ 30, Ex. G. An investigation obtained by the Steadfast Plaintiffs via counsel, showed that the only member of the bar in the Philippines with the name "Von Rodriguez" is employed as Chief of Staff of the Chairman of the Subic Bay Metropolitan Authority in the Philippines, and presumably is not an employee of Defendant Steadfast Equity, Inc. Satterthwaite Decl. ¶ 31.

The Response to the June 2025 Letter indicated, *inter alia*, that Defendant Steadfast Equity Inc. was finalizing the launch of a new U.S.-based entity under a different brand and that U.S. investor communications would be migrated to the new brand over the coming weeks. Satterthwaite Decl. ¶ 32, Ex. G. Defendant Steadfast Equity Inc. further stated that "[t]he SteadfastEquity.com domain will be repurposed exclusively for non-U.S. operations in Asia and other emerging markets." Satterthwaite Decl., Ex. G at 5.

Contrary to Defendant Steadfast Equity Inc.'s assurances, however, only fourteen days later, on July 8, 2025, Defendant Steadfast Equity Holdings, LLC was registered with the State of Delaware, and on information and belief, shortly thereafter, American Headquarters and New York Office addresses were added to Defendants' website. *See* Satterthwaite Decl. ¶¶ 33–34, Ex. H. Indeed, the Defendants even chose a Park Avenue address, just like the Steadfast Plaintiffs. Satterthwaite Decl. ¶¶ 34–35, Ex. I.

Instead of distancing themselves from the U.S. market as promised, Defendants took deliberate steps to move further into it, and into the Steadfast Plaintiffs' headquarters in New York City, with constructive knowledge of the Steadfast Plaintiffs' trademark rights as a result of their federal trademark registrations, as well as actual knowledge of their trademark rights and after having assured the Steadfast Plaintiffs that they would cease use of STEADFAST in the United States.

16

In November 2025, after further investigation into Defendants, the Steadfast Plaintiffs sent a reply to Defendant Steadfast Equity Inc.'s Response to June 2025 Letter (the "Steadfast Plaintiffs' November 2025 Letter"). Satterthwaite Decl. ¶ 36, Ex. J. The Steadfast Plaintiffs' November 2025 Letter pointed out that the Defendants' website was still directly targeting U.S. investors. The November 2025 Letter also asked for confirmation of the status of the purported "Atty." who signed the Response to June 2025 Letter. Satterthwaite Decl. ¶ 37. No response to the Steadfast Plaintiffs' November 2025 Letter has been received. Satterthwaite Decl. ¶ 38.

### G.    Procedural Posture

On April 15, 2026, the Steadfast Plaintiffs filed the above-captioned action under seal until Defendants' domain names steadfastequity.com and steadfastequity.net could be frozen to avoid cyberflight. See Dkts. 1, 4, 6. On April 16, 2026 and April 30, 2026, the Court granted the Steadfast Plaintiffs' Motions to Seal (Dkt. 1) and to Freeze the Domain Names (Dkt. 9) respectively. On May 1, 2026, the Steadfast Plaintiffs obtained confirmation from the registrar NameCheap that it successfully froze the steadfastequity.com domain name. On May 13, 2026, the Steadfast Plaintiffs obtained confirmation from the registrar Network Solutions that it successfully froze the steadfastequity.net domain name. Thereafter, the Steadfast Plaintiffs notified the Court that the case could be unsealed and moved for service by email as to Defendant Steadfast Equity Inc., which was granted on June 9, 2026, Dkt. 14. On May 14, 2026, the Court unsealed the case. Dkt. 3. On June 9, 2026, the Court granted the motion for email service as to Steadfast Equity Inc. Dkt. 14. On June 10, 2026, the Court issued the summons for Steadfast Equity Inc., Dkt. 17, and on June 12, 2026, the Court issued the summons for Steadfast Equity Holdings LLC, Dkt. 18.

### III.    <u>ARGUMENT</u>

#### A.    **Legal Standard for Preliminary Injunction**

In the Second Circuit, a plaintiff seeking a preliminary injunction in the trademark context must show: (1) it will suffer irreparable harm; (2) a likelihood of success on the merits; and (3) an injunction would serve the public interest. *City of New York by and through FDNY v. Henriquez*, 98 F.4th 402, 410 (2d Cir. 2024). The Second Circuit has sometimes also considered whether the balance of the hardships tips decidedly in favor of the moving party. *See, e.g.*, *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022) (including the balance of the hardships as a factor to be considered to decide a motion for preliminary injunction); *see also Salinger v. Colting*, 607 F.3d 68, 78 (2d Cir. 2010) (identifying balance of hardships as a traditional equitable factor).  This memorandum of law addresses all four factors.[2]

Here, the Steadfast Plaintiffs meet the preliminary injunction standard and move for a preliminary injunction as the following claims: (1) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15. U.S.C. § 1125(a); and (3) cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

---

[2] This Court has reiterated the Second Circuit's holding that a preliminary injunction "in the typical trademark case" that "seeks to stop alleged infringement" is a prohibitory injunction, not a mandatory injunction, which means it is subject to the traditional likelihood of success on the merits standard. *TushBaby, Inc. v. Jinjang Kangbersi Trade Co. Ltd.*, No. 24-CV-6150 (JMF), 2024 WL 4627452 at n.4 (S.D.N.Y. Oct. 30, 2024) (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006)).

**B.      This Court May Exercise Personal Jurisdiction Over Defendants**

This Court has personal jurisdiction over Defendants as they are: (i) causing tortious injury within this judicial district; and (ii) publicly asserting in marketing materials aimed at potential investors that they are located within this judicial district.

To exercise personal jurisdiction over an entity: (1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012).

Here, Defendants will have been properly served via the designated agent for Steadfast Equity Holdings LLC and via email pursuant to Court Order for Steadfast Equity, Inc., Dkt. 14, instructing Plaintiffs to serve the Complaint via email along with this Motion for Preliminary Injunction. Moreover, a statutory basis exists to exercise personal jurisdiction over Defendants in the forum-state in which this Court sits, N.Y. C.P.L.R. §§ 301, 302, which meets the requisite minimum contacts of due process, because, *inter alia*, Defendants: (1) have caused injury to the Steadfast Plaintiffs which have a principal place of business in New York City (on the same Park Avenue that Defendants claim is their US office location), through Defendants' intentional ongoing infringement of Plaintiffs' registered trademark; and (2) Defendants publicize in their marketing materials, including on the Infringing Steadfast Website, that they are a US-based investment company with a primary office within this judicial district and a dedicated phone number with a New York area code (646) for investors or potential investors in the United States and Canada. First Bodmer Decl., Ex. C at 38, Ex. D at 2; Satterthwaite Decl., Ex. D at 9–10, Ex. I. Notably, Section 302 "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the

19

transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (citation omitted).

  **C.**  **The Steadfast Plaintiffs Will Suffer Irreparable Harm Absent an Injunction**

  Under the Trademark Modernization Act of 2020 (the "TMA"), which amended Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), a plaintiff seeking injunctive relief in a trademark case is entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits. 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction."). The TMA codifies the presumption of irreparable harm that the Second Circuit regularly applied in trademark cases prior to *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).[3]

  Here, as discussed in detail, *see infra* Section III.D., the Steadfast Plaintiffs have demonstrated a likelihood of success on the merits. Even without a presumption of irreparable harm, however, the Steadfast Plaintiffs are suffering actual irreparable harm via lack of control

---

[3] Nor have Plaintiffs unreasonably delayed in seeking relief. *See Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 300 (S.D.N.Y. 2021) (Significant delay without a good explanation in bringing the preliminary injunction motion counsels against a finding of irreparable injury.). Delay does not negate a finding of irreparable injury where, as here, it was caused by Plaintiffs' "good faith efforts to investigate the alleged infringement." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). Plaintiffs reasonably relied on Defendants' assertions in the summer of 2025 that they would cease use of STEADFAST in the United States (Satterthwaite Decl., Ex. G) while, unbeknownst to Plaintiffs, Defendants instead almost immediately registered the Delaware LLC, a fact discovered by Plaintiffs in January 2026. Reese Decl. ¶ 4. Indeed, until the U.S. entity was discovered, it was not as obvious that the U.S. was the optimal forum in which to take action against Defendants. After discovering the registration of the Delaware LLC, Plaintiffs commissioned a supplemental investigation. Reese Decl. ¶ 5. Thereafter, suit was promptly filed in April 2026, and the first procedural opportunity for Plaintiffs to file the Motion for Preliminary Injunction arose once the Clerk issued the Summons for Defendant Steadfast Equity Holdings LLC on June 12, 2026, Dkt. 18.

over Defendants' use of STEADFAST. Investor confidence is critically important in the hedge fund and capital investment market, and here the Steadfast Plaintiffs' valuable name is at the mercy of Defendants and their dubious scheme. *See* Second Bodmer Decl. ¶¶ 6–7, 10. With each passing day that Defendants' infringing activities continue, the risk grows ever greater that the STEADFAST Mark will be blemished beyond repair.

Adverse publicity has already occurred. The Reddit thread titled "Is this a scam?: HYSA with Steadfast Equity" accuses a STEADFAST-named entity of scamming investors. Users in the thread described Defendants' business as a "total scam," stated "run as fast as you can," and called the SEC filing "garbage." Satterthwaite Decl. ¶ 26, Ex. C. Such online dialogues about whether a STEADFAST-named entity is a scam are precisely the type of harm from which the Steadfast Plaintiffs seek relief—adverse publicity like this can have potentially devastating ramifications to the Steadfast Plaintiffs' decades-earned reputation and goodwill. *See* Second Bodmer Decl. ¶¶ 25–26.

Moreover, Defendant Steadfast Equity Inc.'s amended Form D indicates that it has accepted $250,000 in investment dollars. First Bodmer Decl., Ex. E at 12.  If returns are not made to investors on those dollars, even more negative publicity could ensue.

The Steadfast Plaintiffs' investors have many investment firm options, and as such, the Steadfast Plaintiffs' reputation in the investment community is vital to their business. Second Bodmer Decl. ¶ 7. Injury to the Steadfast Plaintiffs' goodwill and reputation, by its very nature, cannot be adequately compensated by monetary damages. As such, the irreparable harm is ongoing and will continue to worsen absent injunctive relief.

**D.**    **The Steadfast Plaintiffs Are Likely to Succeed on the Merits of their Trademark Infringement and Unfair Competition Claims**

Courts analyze claims under 15 U.S.C. §§ 1114 and 1125 using the same standard. *Nike, Inc. v. B&H Customs Servs., Inc.*, 565 F. Supp. 3d 498, 508 (S.D.N.Y. 2021) ("[I]t is well-established that claims under Sections 1114 and 1125(a) are treated the same."). To prevail on a claim of trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, or unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must demonstrate that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that the defendant (2) used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent, and (6) such use of the mark "is likely to cause confusion as to the affiliation, connection, or association of defendant with plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by plaintiff," 15 U.S.C. § 1125(a)(1)(A). *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993)) (internal quotation marks and citations omitted). The Steadfast Plaintiffs can readily establish these elements.

### 1.    <u>The STEADFAST Mark Is Valid and Strong</u>

The Steadfast Plaintiffs' STEADFAST Mark is a valid mark entitled to the highest degree of protection under the Lanham Act.

Plaintiff Steadfast Capital owns two federal service mark registrations for STEADFAST—Registration No. 6,344,980 (the "'980 Registration") and incontestable Registration No. 3,083,159 (the "'159 Registration") (collectively the "Registrations"). First Bodmer Decl., Exs. A, B. A federal registration on the Principal Register constitutes *prima facie* evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's

22

exclusive right to use the mark in commerce. 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a). The '159 Registration is incontestable, which means it constitutes "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Here, because the Steadfast Plaintiffs have made a *prima facie* showing that the STEADFAST Marks are protectible, the burden falls to Defendants to demonstrate that those marks are not entitled to protection, a burden which Defendants cannot meet. *See NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328, 335–36 (S.D.N.Y. 2014).

Moreover, the STEADFAST Mark is inherently distinctive and commercially strong as applied to financial and investment services. The word "STEADFAST," meaning unwavering or resolute, is suggestive when applied to financial advisory, investment management, and related services. It does not describe any characteristic of the services themselves. Suggestive marks are inherently distinctive and entitled to protection without proof of secondary meaning. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10–11 (2d Cir. 1976).

Further, the STEADFAST Mark is commercially distinct through, *inter alia*: (a) nearly three decades of continuous use in connection with financial services; (b) the management of approximately five billion dollars in assets; and (c) the Steadfast Plaintiffs' sterling reputation in the financial services industry. First Bodmer Decl. ¶¶ 5, 10. The Steadfast Plaintiffs also have effectively policed their mark against numerous third parties using the term STEADFAST in the financial investment world. Second Bodmer Decl. ¶ 8.

### 2.    There Is a Strong Likelihood of Confusion

The Second Circuit applies the eight-factor test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), to assess whether there is a likelihood of

23

confusion between two marks. The *Polaroid* factors are: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the marks; (3) the proximity of the products or services; (4) the likelihood that the prior owner will bridge the gap; (5) evidence of actual confusion; (6) the defendant's good faith (or lack thereof) in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumers. *Id.* at 495. No single factor is dispositive, and a court must consider the factors in the context of the case as a whole. Here, the *Polaroid* factors overwhelmingly favor the Steadfast Plaintiffs.

      **(a) Strength of the Mark.** As discussed above, the Steadfast Mark is inherently distinctive and commercially strong as applied to financial services, is supported by nearly three decades of continuous use, and enjoys both common-law and incontestable federal registration rights. First Bodmer Decl. ¶¶ 5–9; Exs. A, B. The Steadfast Mark has become known in the financial services industry, and specifically within the world of pooled securities investments, as a source of high-quality financial and investment services. First Bodmer Decl. ¶ 10. This factor weighs strongly in favor of the Steadfast Plaintiffs.

      **(b) Degree of Similarity Between the Marks.** Defendants use the mark STEADFAST EQUITY and variants thereof. The dominant element of Defendants' mark is the word STEADFAST—the identical term in which the Steadfast Plaintiffs hold exclusive rights. The addition of the generic word "EQUITY" does not diminish the confusing similarity, as it is merely descriptive of the financial services at issue. *See Bath & Body Works Brand Mgmt., Inc. v. Summit Ent., LLC*, 7 F. Supp. 3d 385, 395 (S.D.N.Y. 2014) (subsequent user may not avoid a likelihood of confusion by adding descriptive matter to another's arbitrary mark); *See also 3 McCarthy on Trademarks and Unfair Competition* § 23:49 (5th ed.) ("A junior user's addition of a generic name of the goods or services will not ordinarily avoid a likelihood of confusion to an

24

otherwise confusingly similar mark."). The marks are identical in their dominant element. This factor, therefore, weighs strongly in favor of the Steadfast Plaintiffs.

(c) **Proximity of the Services.** The services offered by Defendants are virtually identical to those offered by the Steadfast Plaintiffs. Both the Steadfast Plaintiffs and Defendants offer (or in the case of Defendants purport to offer) investment vehicles and financial services, including services related to securities, equity and debt investments, and alternative investments. First Bodmer Decl. ¶¶ 4–5, 24; Exs. C, D. The Steadfast Plaintiffs' federal registrations specifically cover "financial investments in the field of mutual funds, hedge funds and private equity investments and related services," which is precisely the category in which Defendants operate. Even worse, Defendants are targeting New York City, the Steadfast Plaintiffs' primary place of business. Bodmer Decl., Exs. A, B. The complete overlap in services makes consumer confusion virtually inevitable. This factor weighs decisively in favor of the Steadfast Plaintiffs.

(d) **Likelihood of Bridging the Gap.** Because the parties already offer identical or virtually identical services, this factor is inapplicable or weighs in favor of the Steadfast Plaintiffs. There is no "gap" to bridge—the parties appear to be direct competitors operating under the same mark in the same industry.

(e) **Evidence of Actual Confusion.** Although evidence of actual confusion is not required at the preliminary injunction stage, the circumstances here make such confusion virtually certain. If potential investors see the mark STEADFAST associated with any new investment vehicles and related services, like those purported to be offered by Defendants, it is natural for those investors to believe that the Steadfast Plaintiffs are the source of the new investment vehicles and services. Moreover, the Reddit thread discussing Defendants' suspicious business under the STEADFAST name exemplifies the actual reputational confusion already

occurring in the marketplace—consumers are associating the name STEADFAST with a suspicious investment operation, which could well tarnish the Steadfast Plaintiffs' carefully cultivated reputation. This factor weighs in favor of the Steadfast Plaintiffs.

**(f) Defendants' Bad Faith.** Defendants adopted and continue to use the STEADFAST mark with both constructive and actual knowledge of the Steadfast Plaintiffs' prior rights. Plaintiff Steadfast Capital's '159 Registration provided Defendants with constructive notice of the Steadfast Plaintiffs' rights in the STEADFAST mark, and Defendants' infringement of the Steadfast Plaintiffs' federally registered financial services mark by offering a directly competitive fund and financial services under the STEADFAST mark was therefore willful. More significantly, Defendants had actual notice of the Steadfast Plaintiffs' rights through the June 2025 Letter. Yet, after representing that they would phase out the use of STEADFAST in the United States, Defendants formed a new Delaware LLC under the STEADFAST EQUITY name and expanded their U.S. presence by adding a New York City office on Park Avenue. This conduct demonstrates willful, deliberate, and bad-faith infringement. This factor weighs heavily in favor of the Steadfast Plaintiffs.

**(g) Quality of Defendants' Services.** Defendants' services exhibit numerous hallmarks of a potential scam operation, including dubious high-yield returns, misleading claims about regulatory compliance, false statements about their domain name history and track record, a purported "general counsel" who appears to be a Philippine government official, lack of transparency as to their location, and high-pressure sales tactics. First Bodmer Decl. ¶¶ 16, 19–21, 27; Exs. C, D, E; Satterthwaite Decl. ¶ 31, Ex. G. The low quality and questionable legitimacy of Defendants' services create a significant risk of damage to the Steadfast Plaintiffs' name and reputation. *See Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 389 (2d Cir.

2005) ("The quality factor of Polaroid is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality.") (internal quotation marks and citation omitted). This factor weighs strongly in favor of the Steadfast Plaintiffs.

(h) **Sophistication of Consumers.** While the financial services industry involves sophisticated investors, this does not eliminate the likelihood of confusion, and the Second Circuit has cautioned against "woodenly appl[ying] the general rule that likelihood of confusion is diminished when potential purchasers are sophisticated." *See Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 142-43 (2d Cir. 1999). Even sophisticated consumers are likely to be confused when the marks at issue are virtually identical and the services completely overlap. *Id.* ("[W]hen, as here, there is a high degree of similarity between the parties' services and marks, the sophistication of the buyers cannot be relied on to prevent confusion.") (internal quotation marks and citation omitted). Indeed, Defendants deliberately target U.S. investors, including through a Manhattan-area code phone number and a New York City office address, creating the false impression that they are connected to the well-known Steadfast Plaintiffs headquartered in the same city. First Bodmer Decl., Ex. C at 38, Ex. D at 2; Satterthwaite Decl. ¶¶ 34–35, Ex. I. Moreover, the very existence of the Reddit thread asking "Is this a scam?" demonstrates that confusion is likely to occur even among consumers attempting to exercise due diligence. Second Bodmer Decl. ¶ 11. Further, even if an investor conducting due diligence on Plaintiffs is not sure whether Defendants are connected to Plaintiffs, the mere possibility that they could be connected with Defendants' sketchy scheme could cause the investment to be rejected at an early stage. Second Bodmer Decl. ¶ 13. This factor is, at best, neutral and does not overcome the overwhelming weight of the remaining factors.

In sum, every *Polaroid* factor favors the Steadfast Plaintiffs. The Steadfast Plaintiffs are overwhelmingly likely to succeed on the merits of their trademark infringement claims.

### 3.      The Steadfast Plaintiffs Are Also Likely to Succeed on Their Anti-Cybersquatting Consumer Protection Act Claim

The Steadfast Plaintiffs also have a strong likelihood of success on the merits on their count under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).[4] At the preliminary injunction stage, however, the remedy requested is the same as for service-mark infringement, so to avoid redundancy and save space, Plaintiffs will not fully brief the ACPA claim here. *See, e.g.*, *Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 232–33 (W.D.N.Y. 2012) (Preliminary injunction to cease use of marks under trademark infringement claim extended to not using them on the internet and in domain names containing the marks so court did not need to review ACPA claim as well.).

### E.      The Balance of Hardships Tips Decidedly in the Steadfast Plaintiffs' Favor

The balance of hardships weighs overwhelmingly in favor of the Steadfast Plaintiffs. The Steadfast Plaintiffs have invested nearly three decades in building their reputation and goodwill under the STEADFAST Mark. Without an injunction, the Steadfast Plaintiffs face continued reputational harm, consumer confusion, and potential business losses as Defendants trade on the

---

[4] To prove an ACPA claim, a plaintiff must establish that: "(1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." *Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95, 97 (2d Cir. 2011) (*citing* 15 U.S.C. § 1125(d)(1)(a)); *see also Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 497–99 (2d Cir. 2000) ("[A] court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.") (internal quotation marks and citation omitted); *MDB LLC v. Hussain*, No. 14-CV-9281 (VEC), 2016 WL 1267793, at *10 (S.D.N.Y. Mar. 29, 2016) (*citing* 15 U.S.C. § 1125(d)(1)(C)). For the same reasons as set forth under the infringement claims, these elements are met here.

Steadfast Plaintiffs' well-known name to market dubious investment vehicles.

Defendants, by contrast, will suffer no cognizable hardship from being enjoined. Defendants have no legitimate right to use the STEADFAST Mark in connection with financial services in the United States in the face of the Steadfast Plaintiffs' senior, incontestable federal rights. Defendants are junior users who adopted STEADFAST long after the Steadfast Plaintiffs had established their rights. If Defendants are operating a legitimate business—which remains in serious doubt given the myriad red flags identified herein—they can do so under a different name. No legitimate business interest is served by Defendants' continued use of the Steadfast Plaintiffs' protected mark. Moreover, Defendants leaned in even further to the U.S. market after falsely promising Plaintiffs that they would cease use of STEADFAST in the United States.

### F.    The Public Interest Favors an Injunction

The public interest is served by preventing consumer confusion and protecting the integrity of the trademark system. *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) ("The consuming public has a protectable interest in being free from confusion, deception and mistake.").

The public has an interest in not being confused about the source and sponsorship of financial services, particularly in the context of investment vehicles where consumers entrust their money and retirement savings. *See New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.").

The public interest is especially acute here because Defendants' activities bear numerous hallmarks of a fraudulent investment scheme. An injunction would protect the investing public

from the confusing association between the Steadfast Plaintiffs and Defendants' dubious

enterprise, and would serve the broader public interest in protecting ordinary Americans—

including those whose pension funds, scholarship money, or other investments are entrusted to

the Steadfast Plaintiffs' care—from potential harm arising from Defendants' conduct. The

connection to Plaintiffs' reputable brand in the industry will aid in duping consumers into falling

for Defendants' scheme.

## IV.    **CONCLUSION**

For the foregoing reasons, the Steadfast Plaintiffs respectfully request that this Court

grant their Motion for a Preliminary Injunction and enter an order enjoining and restraining

Defendants, their officers, agents, servants, employees, and those persons in active concert or

participation with them, from directly or indirectly using any service mark, trademark, or trade

name containing or consisting of the term STEADFAST or any variation thereof—including but

not limited to the trade names STEADFAST EQUITY, STEADFAST EQUITY INC., and

STEADFAST EQUITY HOLDINGS LLC—in connection with financial and investment

services directed at U.S. residents, and from operating the Infringing Steadfast Website in a

manner that targets or solicits U.S. investors.

Furthermore, given Defendants' actions thus far, there is a probability that Defendants

will not obey, or maintain obeyance of, a preliminary injunction. Plaintiffs ask that the Court

order third-party service providers NameCheap and Network Solutions to effectuate any

preliminary injunction order by transferring temporary control of the domain names of

Defendants' websites to Plaintiffs. *See, e.g.*, *Mattel, Inc. v. www.fisher-price.online*, No. 21-CV-

9608 (LJL), 2022 WL 2801022, at *12–14 (S.D.N.Y. July 18, 2022) (ordering third parties

30

acting in concert with defendant to cease providing services to defendant in connection with the

continued operation of defendant's website as authorized at the preliminary injunction stage).[5]

Dated: June 17, 2026                                    Respectfully submitted,

                                                        /s/ Susan M. Sajadi
                                                        Susan M. Sajadi (NY Reg. No. 4438461)
                                                        Janet F. Satterthwaite (admitted *pro hac vice*)
                                                        Elissa Brockbank Reese (admitted *pro hac vice*)
                                                        Potomac Law Group
                                                        1717 Pennsylvania Ave NW
                                                        Suite 1025
                                                        Washington DC 20006
                                                        Telephone: (917) 238-0990
                                                        ssajadi@potomaclaw.com
                                                        jsatterthwaite@potomaclaw.com
                                                        ereese@potomaclaw.com
                                                        litigationdocketing@potomaclaw.com
                                                        tm@potomaclaw.com

                                                        **Attorneys for Plaintiffs Steadfast Financial LP**
                                                        **and Steadfast Capital Management LP**

---

[5] Defendants might argue that they have a right to use the term STEADFAST in other countries, such as perhaps the Philippines, but given that all the marketing touts the US-focused nature of the business, notably increasing after being contacted by Plaintiffs, the effect on US commerce and the impact on Plaintiffs' goodwill in the US should dictate the result. *See, e.g.*, *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 225 (4th Cir. 2002) (Virginia's interest in not permitting foreign companies to use rights emanating from, and facilities located in, its territory to infringe U.S. trademarks also supports the exercise of *in rem* jurisdiction.); *see also Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 626, 628–29 (4th Cir. 2003) (ACPA requires application of U.S. trademark law and rights, not foreign rights.). Otherwise, any defendant could go obtain rights in a trademark in an obscure foreign jurisdiction not covered by plaintiff's portfolio and then use that as a defense.

## WORD COUNT ATTESTATION

Pursuant to Local Rule 7.1(c), I hereby certify that, excluding the portions that are excludable by Rule, this Memorandum contains 7,781 words.

_/s/ Susan M. Sajadi_
Susan M. Sajadi (NY Erg. No. 4438461)